UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ALMONDNET, Inc., *et al*,

                Plaintiffs,　　　　　　　　　　　ORDER
　　　　　　　　　　　　　　　　　　　　　　　　　　16-CV-1557
     v.

YAHOO! Inc.,

                Defendant.
------------------------------------------------------------x
GLASSER, Senior United States District Judge:

      Pending before the Court is a motion to reconsider the denial of a motion to dismiss for improper venue filed by the Defendant on June 12, 2017. Dkt. No. 70. The Plaintiff's opposition to the motion was predicated upon its assertion that the Defendant has waived its right to that relief and, alternatively, it cross moved to transfer venue to the Southern District of New York. Dkt. No. 71. Oral argument was heard on September 1, 2017 at the conclusion of which the Court denied the motion to dismiss from the bench—having determined, for the reasons stated on the record, that waiver was incontrovertible. Dkt. No. 90.

      The Defendant then petitioned the Federal Circuit Court of Appeals to mandamus this Court to set aside the denial of its motion to dismiss, but was advised by that Court that moving this Court to reconsider that denial would be the appropriate course to follow in the light of its decision in *In re Micron Technology*, 875 F.3d 1091, 1100-01 (Fed. Cir. 2017). The advice was promptly followed with the filing of this motion. Dkt. No. 97.

      The Defendant's belief that reconsideration is warranted and that its motion should be granted may be summarily rejected by adverting to Rule 6.3 of the Local Rules of the Eastern and Southern Districts Courts of New York, which requires the memorandum in support of such a

motion to set forth concisely the matters or controlling decisions which counsel believes the court has overlooked. In this motion to reconsider, the judge, in a real sense, is asked to confess error—to acknowledge that he overlooked some crucial fact or decision announcing a principle of law which should have required a ruling in favor of the movant. Aware of that psychological ego impacting factor, I am also mindful of the admonition Learned Hand is said to have urged be engraved over the portals of every courthouse in the land, namely, Oliver Cromwell's letter to the General Assembly of the Church of Scotland on August 5, 1650: "Think I beseech ye, in the bowels of Christ, that ye may be wrong."

The thrust of the defendant's motion is that I was wrong in my view that *TC Heartland v. Kraft Foods Group Brands*, 137 S. Ct. 1514 (2017) *did not* change the law and that *In re Micron Technology,* 875 F.3d 1091 (Fed. Cir. 2017) confirms their view that it did. In their Memorandum of Law in Support of the Motion, Dkt. No. 97-1 (DM), they state the dispositive legal standard for a motion to reconsider: "The major grounds justifying reconsideration are <u>an intervening change in controlling law</u>, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." DM at 4 (emphasis added) (citations omitted). I would note that the cases that have addressed motions to reconsider have also taught that it should not be used to provide an opportunity to reargue points argued previously, *United States v. Gross*, 2002 W.L. 32096592, at *4 (E.D.N.Y. 2002), nor to repackage arguments previously made, and that the decision to grant or deny the motion rests within the sound discretion of the court. *Devlin v. Transportation Communications International Union*, 175 F.3d 121, 132 (2d Cir. 1999). The limitation upon the exercise of that inherent discretionary power is that it be exercised reasonably in response to the specific issue addressed and is not expressly limited by

any rule or statute. *Dietz v. Bouldin*, 136 S. Ct. 1885, 1892-93 (2016). With Judge Learned Hand's admonition clearly in mind, I am confident that in denying this motion I have not overlooked a material matter or controlling decision and that there was no intervening change in controlling law. Although a summary disposition in accordance with Rule 6.3 is warranted, a response beyond it is appropriate.

The amount of litigation spawned by *TC Heartland* on venue in patent infringement cases and on waiver of venue is staggering, as is the effect it has had on the number of those cases filed in the Delaware District Court since that case was decided.

A more expansive disposition of this motion requires a response to two assertions made vigorously by the Defendant on the argument of the original motion to dismiss, Tr. Dkt. 90, and made again on its motion to reconsider and in its Memoranda of Law in support of those motions. DE 23, 34, 97-1 and 105. Those are: (1) that *TC Heartland* <u>changed the law</u> governing venue in patent infringement cases; and (2) that prior to that change in the law, this motion to dismiss on venue grounds was not available and invoking waiver, therefore, would offend a fundamental understanding of the law of equity. I address those arguments in turn.

I. <u>A Change In the Law</u>

The judicial ink that has been spilled on these issues is considerable and I will refrain from unnecessarily spilling more. The view that the Supreme Court announced a change in the law when it decided *TC Heartland* requires the counterintuitive acceptance of the understanding that a Federal Circuit Court of Appeals can overrule (or ignore) what has been the law as decided by The Supreme Court of the United States for decades. The Appeals Court ostensibly achieving that result is *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574 (Fed. Cir. 1990).

The issue before that court, stated simply, was whether the general venue statute, 28 U.S.C. § 1391(c), amended in 1988 to provide that a defendant corporation shall be presumed to reside in any district in which it is subject to the court's personal jurisdiction was intended by Congress to be read together with § 1400 (b), the limited venue statute applicable to an action against a corporation for patent infringement, which requires the action to be brought in the state of its incorporation. The *VE Holding* court decided that it was. It arrived at that conclusion by its understanding of the rule of statutory construction that the presumption that Congress is knowledgeable about existing law pertinent to legislation does not favor maintaining the independence of the two sections. That presumption was entertained notwithstanding its acknowledgment that "Congress has not given any indication of whether it intended to change the scope of venue under § 1400(b). If we can infer anything from Congress'[s] prior judicial interpretation of § 1400(b), given the clear language of the statute, it would be that Congress did intend to change the scope of venue under § 1400(b)" 917 F.2d at 1581.

That concluding inference is puzzling given the court's discussion in the pages immediately preceding it, *viz*.,: "The Supreme Court in 1942 and again in 1957 took a restrictive view of venue in patent infringement cases, holding in effect that the meaning of the terms used in § 1400 (b) was not to be altered or supplemented by other provisions found in the venue statute. 917 F.2d at 1577 (emphasis mine). And again, "[t]he specific question in *Fourco* was whether the statutory language previously enacted by the Congress as § 1391(c) supported a conclusion that Congress intended to have §§ 1391(c) and 1400(b) read together. On the basis of the non-specific language of § 1391(c) and prior history as the Court read it, the Court concluded the answer was no." *Id.* at 1579.

-4-

Reiteration of more of the holding of *TC Heartland* may smack of gilding the lily. Having decided that it did not change the law, I do so given the Defendant's insistence that it did and the numerous cases citing *VE* ostensibly of the same view. In that regard, *see The Trail Of The Calf,* 32 Cornell L. Rev. 137 (1946).

After tracing the history of the relevant statutes beginning with the Judiciary Act of 1789, the Supreme Court in *TC Heartland* reached the Act of March 3, 1897, which "placed patent infringement cases in a class by themselves, *outside the scope of general venue legislation. . . .* At the time, a corporation was understood to 'inhabit' only the State in which it was incorporated." *TC Heartland*, 137 S. Ct. at 1518 (citation and internal quotation marks omitted).[1] The Court then addressed the scope of § 1400(b)'s predecessor in *Stonite Products Co. v. Melvin Lloyd Co.*, 315 U.S. 561 (1942), deciding that the patent venue statute "was adopted to define the exact jurisdiction of the federal courts in actions to enforce patent rights, 'a purpose that would be undermined by interpreting it to dovetail with general provisions relating to the venue of civil suits.' The Court thus held that the patent venue statute 'alone should control venue in patent infringement proceedings.'" 137 S. Ct. at 1518.

The Supreme Court's continued review of the statutory history arrived at the Act of June 25, 1948 and following some brief discussion concluded that *Stonite* was reaffirmed in *Fourco Glass Co., v. Transmirra Products Corp.*, 353 U.S. 222 (1957), "holding that § 1400(b) 'is the

---

[1]Addressing the Act of March 3, 1897, the Court in *Bowers v. Atlantic G. & P. Co.,* 104 F. 887 (C.C.S.D.N.Y. 1900) wrote, at 888-89: "This is the latest legislative deliverance upon the subject, and there can be no question that under its provisions, considered alone, the only districts where the courts have jurisdiction are, first, the district in which the defendant is an inhabitant . . ." This case is informative in its discussion of the historical evolution up to that time of the patent venue statute.

sole and exclusive provision controlling venue in patent infringement actions and . . . is not to be supplemented by § 1391(c).'" 137 S. Ct. at 1519.

"The landscape remained effectively unchanged" the Court wrote, until 1985 when § 1391(c) was amended to provide that as regards venue, a corporation is deemed to reside wherever it is subject to personal jurisdiction when the action is begun. § 1400(b) remained unchanged but *VE Holding* decided it was Congress's undisclosed intent that 1391(c) and 1400(b) were to be read together redefining, in the process, the meaning of the term "resides" in 1400(b). The Court then disavowed *VE Holding* stating, unequivocally, that:

> In *Fourco*, this Court definitively and unambiguously held that the word "reside[nce]" in § 1400(b) has a particular meaning as applied to domestic corporations: It refers only to the State of incorporation. Congress has not amended § 1400(b) since *Fourco*, and neither party asks us to reconsider our holding in that case. Accordingly, the only question we must answer is whether Congress changed the meaning of § 1400(b) when it amended § 1391. When Congress intends to effect a change of that kind, it ordinarily provides a relatively clear indication of its intent in the text of the amended provision. See *United States v. Madigan,* 300 U.S. 500, 506, 57 S.Ct. 566, 81 L.Ed. 767 (1937) ("[T]he modification by implication of the settled construction of an earlier and different section is not favored"); A. Scalia & B. Garner, Reading Law 331 (2012) ("A clear, authoritative judicial holding on the meaning of a particular provision should not be cast in doubt and subjected to challenge whenever a related though not utterly inconsistent provision is adopted in the same statute or even in an affiliated statute").
>
> xxx
>
> The current version of § 1391 does not contain any indication that Congress intended to alter the meaning of § 1400(b) as interpreted in *Fourco*. Although the current version of § 1391(c) provides a default rule that

> applies "[f]or all venue purposes," the version at issue
> in *Fourco* similarly provided a default rule that applied
> "for venue purposes."

*TC Heartland*, 137 S. Ct. at 1520.

In rejecting *VE Holding*, the Supreme Court noted that the circuit court's statutory construction which divined the intent of Congress was "belied by the text of § 1391(a)(1)," which states "[e]xcept as otherwise provided by law . . . this *section* shall govern the venue of all civil actions." *Id*. The Court added:

> Finally, there is no indication that Congress in 2011
> ratified the Federal Circuit's decision in *VE Holding*.
> If anything, the 2011 amendments undermine that
> decision's rationale . . . In short, nothing in the text
> suggests congressional approval of *VE Holding*. As
> applied to domestic corporations, "reside[nce] in
> § 1400(b) refers only to the State of incorporation.
> 137 S. Ct. at 1521

A reading of *TC Heartland* as discussed above can only be understood as re-affirming the law as it is was announced in *Stonite* and *Fourco* and even before them in *Shaw v. Quincy Mining Company*, 145 U.S. 444, 453 (1892) ("under the existing Act of Congress, a corporation incorporated in one state only, cannot be compelled to answer in a court of another state"). It did not change the law. The Supreme Court explicitly rejected *VE Holding*—"Finally, there is no indication that Congress in 2011 ratified the Federal Circuit's decision in *VE Holding*. If anything, the 2011 amendments undermine that decision's rationale." *Stonite, Fourco*, and *Shaw* were all still alive in the law when *VE* was decided and to paraphrase Mark Twain, its report that the old law is dead was greatly exaggerated. It is worth noting that *VE*'s decision was based upon its determination of Congress's intention while acknowledging that "Congress'[s] intention is simply not known" and adding: "'Ordinarily, Congress'[s] silence is just that—silence.'" *VE Holding*, 917 F.2d at 1581 (quoting *Alaska Airlines Inc., v. Brock*, 480 U.S. 678, 686 (1987)).

"The process of psychoanalysis has spread to unaccustomed fields. There is a wise and ancient doctrine that a court will not inquire into the motive of a legislative body or assume them to be wrong." *United States v. Constantine,* 296 U.S. 287, 298-99 (1936) (Cardozo, J., dissenting).

The literature on the construction of statutes is vast and the judicial responses to that challenge was recently assembled by Gluck and Posner, *Statutory Interpretation On The Bench: A Survey Of Forty-Two Judges On The Federal Courts Of Appeals,* 131 Harvard L. Rev. 1298 (2018); *see also,* Katzmann*, Judging Statutes* (Oxford Press 2014).

An insightful observation on that subject was made by Justice Frankfurter who wrote that in construing a statute "[i]t makes a great deal of difference whether you start with an answer or with a problem." *Some Reflections On The Reading Of Statutes,* 47 Colum. L. Rev. 527, 529 (1947). An insight arguably revealing of the path to the decision in *VE*.

The mating of the Mandate and *Micron* being the progenitor of this motion to reconsider, a consideration of that case is appropriate. Given my strongly held view that *TC Heartland* did not change the law in force when it was decided, the *Micron* opinion would beseech me to think I may be wrong. I have thought of that possibility and resist the beseechment. My reading of *TC Heartland,* explicated above, is completely inconsistent with the two defining issues decided in *Micron*, *viz.:* (1) "We conclude that *TC Heartland* <u>changed</u> the controlling law in the relevant sense" and (2) "[t]he venue defense now raised by Micron (and others) based on *TC Heartland*'s interpretation of the venue statute was not 'available,' thus making the waiver of Rule 12(g)(2) and (h)(1)(A) inapplicable." 875 F.3d at 1094.

At the first hearing on the motion to dismiss for improper venue relying upon *TC Heartland* the Defendant stated, "[f]or the last 27 years the Court's interpretation of the word

'resides' was . . . where you could get personal jurisdiction over the corporation . . . The *TC Heartland* case . . . drastically changed that interpretation . . . ."

> THE COURT: May I interrupt you, sir. If you'll forgive me.
>
> THE COURT: Now, with respect to your last observation that *TC Heartland* made a drastic change in the law with respect to venue, with all due respect, sir, I think that statement is a little disingenuous. *TC Heartland* makes it very clear we're not making any change in law. Back as far as 1947 or somewhere in the 1940s, the Supreme Court in *Stonite* decided precisely what the court reaffirmed in *Fourco*. And in *TC Heartland* the Supreme Court very clearly says all we're doing is applying the law as it has existed at least as far back as *Stonite*. Your argument really requires an assertion that a Circuit Court can overrule a Supreme Court decision which has been undisturbed for well over 60 years.

Tr. September 1, 2017 at 3-4

In denying the motion from the bench I said:

> . . . there is no authority, no conceivable basis upon which a Circuit Court or any other court can overrule or disrupt the Supreme Court decision. That Supreme Court case was out there from the moment this complaint was filed. And you've been litigating along for about a year and a half now relying upon a case which flew in the face of the Supreme Court of the United States.

Tr. September 1, 2017 at 34-35.

In disavowing the federal court's decision in *VE Holding* and in denying the motion to reconsider, disavowing the affirmation of that court in *Micron*, I mean no disrespect for that federal circuit court. I take refuge in the principle that "district courts in a circuit owe obedience to a decision of the courts of appeals in that circuit", Moore's *Federal Practice* § 134.02[2] (3rd ed. 2018). That teaching was conveyed more eloquently by then Circuit Court Judge Ruth Bader Ginsburg in *In re Korean Air Lines,* 829 F.2d 1171 (D.C. Cir. 1987) who wrote: "There is no room in the federal system of review for rote acceptance of a decision outside the chain of direct review. If a federal court simply accepts the interpretation of another circuit without [independently] addressing the merits, it is not doing its job." *Id.* at 1175. And, more pointedly for our case, that "each [federal court] has an obligation to engage independently in reasoned analysis. Binding precedent for all is set only by the Supreme Court, and for the district courts within a circuit, *only by the court of appeals for that circuit*." *Id.* at 1176 (emphasis added).[2]

However, "[u]nder our form of government and long established law and custom, the Supreme Court is the ultimate authority on the interpretation of . . . our laws; its interpretation may not be disregarded." *Jaffree v. Wallace*, 705 F.2d 1526, 1532 (11th Cir. 1983). In denying

---

[2] In an opinion of the New York Court of Appeals written more than 150 years ago, two stunning sentences presaging Justice Ginsburg's which are peculiarly applicable to this case were written by the Court as follows:
> "I . . . hold it to be the duty of every judge and every court to examine its own decisions, and the decisions of other courts without fear, and to revise them without reluctance. But when a question has been well considered and deliberately determined, whatever might have been the views of the court before which the question is again brought . . . it is not at liberty to disturb or unsettle such decision, unless impelled by *the most cogent reasons*."

*Baker v. Lorillard*, 4 N.Y. 257, 261 (1850).

the Defendant's motions, I discharged my obligation to that higher authority. That fundamental principle has been expressed in other declarative terms, for example: "The doctrine of *stare decisis* protects the legislative expectations of those who live under the law and, as Alexander Hamilton observed, is one of the means by which exercise of "an arbitrary discretion in the courts is restrained." *Hubbard v. United States*, 514 U.S. 695, 716 (1995); and more colorfully in a *per curiam* opinion in *Hutto v. Davis,* 454 U.S. 370, 374 (1982): "Admittedly, the Members of this court decide cases 'by virtue of their commissions, not their competence.' But unless we wish anarchy to prevail within the federal judicial system, a precedent of this court must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be."[3]

Given those unambiguous and forcefully stated principles of law, how does one explain *VE Holding* and *Micron,* and the hundreds of cases following in their wake, all indifferent to the Supreme Court's teachings in *Fourco* and *Stonite*, cases of which they were aware, as citations to them in their opinions make manifest. *See, e.g., VE Holding* 917 F.2d at 1582; and *Micron*, 875 F.3d at 1098. And, more specifically, writing "The venue objection was not available until the Supreme Court decided *TC Heartland* because, before then, it would have been improper, given controlling precedent, for the district court to dismiss or to transfer for lacks of venue", followed immediately thereafter with "The law of precedent is part of what determines what law controls." 875 F.3d at 1096-97.

---

[3]Judge L. Hand said it more engagingly in his dissent in *Spector Motor Service v. Walsh*, 139 F.2d 809, 823 (2d Cir. 1944) thus: "Nor is it desirable for a lower court to embrace the exhilarating opportunity of anticipating a doctrine which may be in the womb of time but whose birth is distant."

In re-reading *Micron*, I was repeatedly puzzled by the following statement: "We conclude that *TC Heartland* changed the controlling law *in the relevant sense*," 875 F.3d at 1094 (emphasis added). What is the meaning of <u>relevant</u> sense—relevant to what? It is ostensibly meant in the sense that the venue defense was not available to *Micron* prior to *TC Heartland* because the district court was bound to follow that circuit's existing precedent, namely, *VE Holding*. Putting aside the flaw in that conclusion which disregards *Fourco* and the demand of *stare decisis*, the key to the enigmatic "in the relevant sense" is to be found, I suggest, in *Hubbard v. United States* 514 U.S. 695 (1995). In that case, the issue before the Court was whether 18 U.S.C. §1001, the false statement statute, applied to such statements made in judicial proceedings. In a prior case, *United States v. Bramblett,* 348 U.S. 503 (1955), the jury convicted the defendant for making a false statement in a bankruptcy court proceeding. On appeal, the defendant argued that his conviction was barred by the Sixth Circuit in *Morgan v. United States*, 309 F.2d 234 (C.A. D.C. 1962), cert. denied, 373 U.S. 917 (1963), which decided that only false statements made within a court's "administrative" or "housekeeping" functions are culpable, while those made while a court is performing its adjudicative functions are not. The Court of Appeals affirmed the conviction concluding that the judicial function exception, although it was recognized in other circuits, did not exist. The split in the circuits to which that affirmance gave rise prompted the Supreme Court to grant *certiorari*. In the intervening 30 years, circuits from coast to coast cut back the reach of *Bramblett* and federal judges applied the judicial function limitation first suggested by the circuit court in *Morgan*. In that intervening period, Congress neither repudiated that limitation or refined it, leading courts to decide that "it is too late in the day to hold that no exception exists." *See, United States v. Mayer*, 775 F.2d 1387, 1390 (9th Cir.

1985); and *United States v. Masterpol*, 940 F.2d 760, 765 (2d Cir. 1991). Faced with the conflicting consideration of respecting *stare decisis*, its *Bramblett* precedent, or preserving the judicial exception interpretation of § 1001 that "has prevailed over 30 years", the court overruled *Bramblett*. 514 U.S. at 715.

The meaning of that enigmatic sentence in *Micron*—"*TC Heartland* changed the controlling law <u>in the relevant sense</u>"—thus becomes apparent. Justice Rehnquist, dissenting in *Hubbard*, prophetically foretold *VE Holding* and *Micron*. One of the reasons given by the Court for overruling *Bramblett,* he wrote, was:

> styled as an 'intervening development in the law'; under it, decisions of courts of appeals that cannot be reconciled with our earlier precedent are treated as a basis for disavowing, not the aberrant court of appeals decisions, but, *mirabile dictu* our own decision! This novel corollary to the principle of *stare decisis* subverts the very principle on which a hierarchical court system is built.
> xxx
>
> One of the consequences of this highly selective standard for granting review is that this Court is deprived of a very important means of assuring that the courts of appeals adhere to its precedents. It is all the more important, therefore, that no actual inducements to ignore these precedents be offered to the courts of appeals. But today's decision is just such an inducement; it tells courts of appeals that if they build up a body of case law contrary to ours, their case law will serve as a basis for overruling our precedent. It is difficult to imagine a more topsy-turvy doctrine than this, or one more likely to unsettle established legal rules that the doctrine of *stare decisis* is designed to protect.

Hubbard v. U.S., 514 U.S. at 718-19.

The analogy is clear. *TC Heartland*, decided in 2017, "changed" the body of case law as it had been built up by *VE Holding*, decided 27 years earlier, in 1990, and by simply obeying the overlooked (or ignored) principle of *stare decisis* upon which our hierarchical judicial system is based, *mirabile dictu* "changed" the law as it then was in *Fourco*, without changing it by one jot or tittle, but by reaffirming it. The significant difference is that in *Hubbard*, the Supreme Court, which is not bound by *stare decisis,* overruled its prior decision in *Bramblett*. *Bosse v. Oklahoma*, 137 S. Ct. 1, 2 (2016) ("Our decisions remain binding precedent until we see fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing validity.") In this case, *TC Heartland* reaffirmed and did not overrule *Fourco*. *VE Holding* and its progeny, though bound by *stare decisis*, purported to do that.

The burden of advocating the abandonment of the still viable precedent of *Fourco* and *Stonite* was to be borne by the Defendant and which is greater when urging the Court to overrule a statute as it was construed by those cases. "Considerations of *stare decisis* have special force in the area of statutory interpretation, for here . . . the legislative power is implicated and Congress remains free to alter what we have done." *Patterson v. McClean Credit Union*, 491 U.S. 164, 172-73 (1988).

It was in obedience to the principle of *stare decisis* that the Defendant's venue motion to dismiss was denied as is its motion to reconsider.

II. <u>Waiver</u>

In denying this motion to reconsider, I reject not only the Defendant's assertion that I was wrong in deciding that *TC Heartland* did not change the law, I also deny their motion to reconsider that I was wrong in deciding that they forfeited the defense of waiver. In that respect,

I would agree with the *Micron* court's conclusion that "waiver . . . is not the only basis on which a district court might reject a venue defense for non-merit reasons, such as determining that the defense was not timely presented. A less bright-line, more discretionary framework applies even when Rule 12(g)(2) and Rule 12(h)(1)(A) does not." 875 F.3d at 1094.

I refrain from an extended discussion of the equitable principle of waiver with all its commutations and permutations. I incorporate by reference the docket sheet for this case and rest in confident reliance upon the rule of *res ipsa loquitur*.

I should add, that in the interest of completeness, I also deny the Plaintiff's pending conditional motion to transfer the case to the Southern District of New York. Dkt. No. 101.

While this motion to reconsider was pending, the Plaintiff sued Oath Holdings, Inc., a corporate successor to this Defendant, in the District Court in Delaware alleging infringement of a related patent. The Plaintiff offered to transfer this case for consolidation with it to Delaware. The Defendant refused the offer, noting that the Plaintiff previously refused the Defendant's offer to move the case to the Northern District of California.

On July 6, 2018, the Plaintiff "conditionally move[d] to transfer this case to the District of Delaware unless the Court denies the defendant's pending motion to reconsider or grants the plaintiff's pending conditional motion to transfer the case to the Southern District of New York." In view of the adverse determination of the conditions precedent to that motion, it is hereby denied as moot.

More than a year of motions has been devoted to venue. Those motions were accompanied, of course, with the ubiquitous memoranda in support of, in opposition to, and in reply to, the opposition. The intellectual effort, the time, the expense devoted to those motions,

to say little of the litigator recriminations weaved throughout, gives rise to the question what purpose is served, what significant difference does it really make to these parties who have been litigating in this court for more than two years and have advocated for California, the Southern District, and Delaware as suitable venues?

The purpose of venue in a civil case[4] was to protect the defendant from the inconvenience or hardship of having to defend an action in a court either remote from his residence or from the place where the controversy occurred. The need for that protection was surely acute when transportation was primitive and communication was before telephone or telegraph and by pony express. The need for that protection (forum shopping aside) in the 21st century, by and large, is a matter of convenience rather than necessity, when distances have shrunk, transportation is safe and swift, communication by computer, email, fax, Skype, etc. makes the need to leave one's home or office to litigate less urgent.

These gratuitous observations having been made, induced by this litigiousness, in sum:

- The Defendant's motion to reconsider is denied;

- The Plaintiff's motion to transfer to the Southern District of New York is denied;

- The Plaintiff's conditional motion to consolidate and transfer to Delaware is denied.

The parties are directed to appear at 11:00 a.m. on August 30, 2018 for a status conference.

SO ORDERED.
Dated:   Brooklyn, New York                         /s/
         August 21, 2018                         I. Leo Glasser          U.S.D.J.

---

[4]In a criminal case, the VI Amendment to the Constitution prescribes venue to be the place where the crime was committed.